# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 25-CR-1029-CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| JUSTIN NOEL ALLEN, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is a Report and Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending that the Court grant defendant's motion to suppress. (Doc. 40). The government filed an objection. (Doc. 41). For the following reasons, the government's objection is **overruled**, the R&R is **adopted**, and defendant's Motion to Suppress (Doc. 28) is **granted.**

## II. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's R&R, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake [ ] a de novo review of the disputed portions of a magistrate judge's [R&R]"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the

recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's R&R when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of Judge Roberts' R&R de novo.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (cleaned up)[1] (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. DISCUSSION

#### A. Procedural History

On June 24, 2025, the grand jury returned an indictment charging defendant with one count of manufacture of a controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and one count of possession with intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B). (Doc. 3). On August 29, 2025, defendant filed a motion to

---

[1] In electing to still used the (cleaned up) parenthetical here, the Court is expressing its agreement with a recent special concurrence from the Iowa Court of Appeals. *State v. Landrum*, No. 24-2020, 2025 WL 3022865, at *8 (Iowa Ct. App. Oct. 29, 2025) (Langholz, J., concurring specially).

suppress, requesting suppression of any illegal drugs and paraphernalia seized from defendant's residence on Clark Street in Dubuque, Iowa. (Docs. 28 (motion) & 28-1 (inventory of items to be suppressed)). Defendant included two exhibits in support of his motion: a copy of the search warrant issued for his residence, (Doc. 28-3), and Dubuque Police Department Investigator Chad Leitzen's body camera footage from October 14, 2024, (Doc. 28-4). Dubuque County Sheriff's Investigator Matthew Sitzmann completed the warrant application. (Doc. 28-3; Doc. 33-1). On September 9, 2025, the government filed a resistance to defendant's motion, (Doc. 33), and included a copy of the search warrant as its exhibit as well (Doc. 33-1). On September 16, 2025, defendant filed a reply. (Doc. 36).

On September 18, 2025, Judge Roberts held a hearing on defendant's motion. (Doc. 37). At the hearing, the government called Investigator Sitzmann as a witness. (*Id.*). The parties offered and Judge Roberts admitted the three exhibits attached to their respective motions. (*Id.*). Following the hearing, Judge Roberts issued his R&R, recommending that the Court grant defendant's motion to suppress. (Doc. 40, at 3). The government filed a timely objection to the R&R. (Doc. 41). At the time of writing, the transcript of the hearing is not yet filed.[2]

---

[2] The Court finds the suppression hearing transcript is not necessary for the Court to rule on the R&R. First, "[o]nly that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause," so the lack of a transcript from the hearing does not prevent the Court from conducting its analysis on the probable cause issue. *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995). Second, Investigator Leitzen, whose conduct is at the heart of the motion, did not testify at the suppression hearing, (Doc. 37), but the Court has his body camera footage from October 14, 2024, as an exhibit, (Doc. 28-4), so the Court has already has all the relevant evidence regarding Investigator Leitzen. Last, the facts are not in dispute here, so the Court is still able to analyze the *Leon* good faith exception issue without needing the transcript to make any factual rulings. *See United States v. Leon*, 468 U.S. 897 (1984).

The government objects to Judge Roberts' two legal conclusions that there was not probable cause to support the search warrant and that the *Leon* good faith exception does not apply. (Doc. 41, at 1). The Court will review those two legal conclusions in the R&R de novo. Neither party has objected to Judge Roberts' findings of fact. The Court has independently reviewed the record and finds no errors in Judge Roberts' detailed and thorough findings of fact; the Court adopts Judge Roberts' factual findings in their entirety. To the extent they are necessary, the Court includes additional facts in the analysis section below. The basic facts, as summarized by Judge Roberts, are that "[o]n October 14, 2024, City of Dubuque Police Department . . . and Fire Department personnel were dispatched to defendant's residence, the basement of a single-family home. After defendant was resuscitated from an apparent drug overdose, he was taken to a hospital and law enforcement obtained a warrant to search his residence." (Doc. 40, at 3). Defendant challenges the search warrant and subsequent search.

### B. Search Warrant

Defendant argues the search warrant Dubuque police officers relied on to search defendant's residence was invalid, and therefore the Court should suppress the items seized under it. Defendant claims "[b]ecause Investigator Leitzen's observations cited in the warrant application were the product of a warrantless entry in the absence of either consent or exigency, those observations must be excised from the warrant application." (Doc. 28-2, at 3–4). According to defendant, if Investigator Leitzen's observations are excluded "the remainder of the information within the four corners of the warrant application falls short of establishing probable cause[.]" (*Id.*, at 4). More specifically, defendant argues all that is left are statements about the overdose, but "the overdose here merely creates probable cause that the defendant used an opioid. But this does not mean that there would be evidence of drug use still inside his apartment." (*Id.*, at 8).

It is undisputed that Investigator Leitzen entered defendant's apartment without a search warrant and that his observations from his unauthorized entry comprise paragraph 2 of the search warrant application. *See* (Docs. 28-3, at 7; 33-1, at 7). The government does not assert there were any exigent circumstances or consent that justified Investigator Leitzen's entry into defendant's residence before the warrant was issued, and for that reason, the Court finds Investigator Leitzen's pre-warrant observations should be excised from the warrant application.[3] Having found Investigator Leitzen's observations (paragraph 2) of the warrant should be excised, the Court must now analyze whether there was probable cause in the warrant without them.

### 1. *Probable Cause*

The government argues that even without Investigator Leitzen's observations, the warrant application still provided probable cause, largely based on defendant's apparent overdose and his positive response to treatment he received from emergency responders. (Doc. 33, at 4–8). Defendant emphasizes that regarding probable cause, once the Court ignores Investigator Leitzen's observations, "there was simply one circumstance; to wit, [defendant] used a drug. Law enforcement's reasonable belief that [defendant] used a

---

[3] Judge Roberts is more generous to the government than the Court here in analyzing the legality of Investigator Leitzen's first entry into defendant's residence. The Court concludes that the government has waived this argument as, first, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). Second, the government has not offered any support for a potential claim of exigent circumstances or consent to overcome that presumption of unreasonableness. *See United States v. Kalb*, 750 F.3d 1001, 1005 (8th Cir. 2014) (finding an argument waived because it was not backed up "with specific reasons, citations to the record, or relevant legal authority"); *Allied World Specialty Ins. Co. v. City of Ferguson, Mo.*, No. 4:18CV000827 SRC, 2019 WL 4040134, at *2 (E.D. Mo. Aug. 27, 2019) ("The Court cannot determine whether this argument has any validity when the party asserting it does not provide any support for the argument."). Lastly, on its own review of the record, the Court finds that Judge Roberts did not clearly err in finding that there was no justification for the warrantless entry into defendant's home. (Doc. 40, at 20–21 ("Inv. Leitzen's entry into the basement and concomitant search . . . is clearly a violation of defendant's Fourth Amendment rights[.]")).

drug does not support finding probable cause to believe there would be evidence of drug use within the apartment." (Doc. 36, at 2).

The Fourth Amendment ensures that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also United States v. Green*, 954 F.3d 1119, 1122 (8th Cir. 2020) ("Under the Fourth Amendment, search warrants must be supported by probable cause."). "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation marks removed) (citing *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (per curium)); *accord United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008) ("If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established.").

More specifically, to be supported by probable cause a warrant must contain "evidence of a nexus between the contraband and the place to be searched[.]" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). In looking for a nexus, courts consider "the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999). Conclusory statements are insufficient to demonstrate that probable cause exists. *United States v. Moore*, No. 25-cr-1036-CJW, 2025 WL 3014225, at *4 (N.D. Iowa Oct. 28, 2025) (citing *United States v. Summage*, 481 F.3d 1075, 1077–78 (8th Cir. 2007)). When a court must excise information, "[t]he sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information." *United*

*States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004). "Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, 'cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)).

Having reviewed Judge Roberts' careful and detailed analysis on the probable cause issue, the Court concludes that there is no probable cause to support the nexus between the contraband and the place to be searched. Excluding paragraph 2, the appropriateness of which is not in dispute, the warrant application at issue asserts: (1) defendant possibly overdosed on heroin, (2) defendant responded to Naloxone treatment, (3) defendant's acquaintance observed defendant possibly overdose but did not observe him use drugs, (4) defendant admitted to taking something but not knowing what, (5) Naloxone is only effective treatment for a person who has opiates in their system, and (6) Investigator Sitzmann believed there was evidence of drug use which led to defendant's overdose in defendant's apartment. (Docs. 28-3, at 7; 33-1, at 7).

Taking all this information together, while the warrant may support a conclusion that defendant used drugs, the nexus between that drug use and additional drugs and paraphernalia likely being found in the Clark Street residence is thin, if not non-existent. The warrant application simply contains no information on the likelihood that defendant used drugs at his residence and that there would be illegal drugs and drug paraphernalia remaining at the residence other than in the excluded paragraph 2. *See* (Docs. 28-3, at 1; 33-1, at 1 (listing the property to be searched)). As the warrant application is lacking that nexus, the Court finds, as Judge Roberts did, that the warrant was not supported by probable cause and is thus invalid.

The government further argues that Judge Roberts overlooked:

7

> that the call for service was for a report of a possible heroin overdose, that the reporting party was with the defendant who appeared to be under the influence before the reporting party observed defendant become unconscious; and that the officers believed there is currently evidence of drug use, some of which may have contributed to defendant's apparently [sic] overdose, inside the defendant's residence.

(Doc. 41, at 2–3). Furthermore, "[t]he search warrant created a nexus to the defendant's residence because that's the location he was observed to be under the influence, subsequently became unconscious, and where defendant was administered Naloxone[.]" (*Id.*, at 4). On its de novo review, however, the Court considered all this information and finds that even looking specifically at the statements punctuated by the government, the search warrant does not contain a link between the nature of the crime here or the reasonable, logical likelihood of finding useful evidence of that crime. To be clear, the crimes charged by the government are manufacture of a controlled substance and possession with intent to distribute a controlled substance, not drug use or drug overdose, although law enforcement may have also been investigating a charge of possession of drug paraphernalia. *See* (Doc. 3 (indictment)). That defendant used drugs at some point is not in dispute, even by defendant himself, but that he used drugs in his apartment and left behind evidence of that drug use or distribution is not established sufficiently here. Although the government claims that it must be that defendant used drugs and left behind additional drugs and drug paraphernalia in his apartment, it is equally as likely that he used drugs somewhere else and had nothing to leave behind in his home. And while Investigator Sitzmann wrote that he believed there was evidence of drug use inside defendant's residence, it is unclear where that belief came from as he was not on scene, nor did he elaborate. The remaining conclusory statements in the warrant application are insufficient to demonstrate otherwise. Thus, the Court overrules the government's objection to Judge Roberts' first legal conclusion that the warrant lacked probable cause.

The Court next reviews whether the *Leon* good faith exception can save the items seized pursuant to the invalid warrant from suppression.

### 2. **Leon *Good Faith Exception***

In the alternative, the government claims that the Court does not have to suppress the items seized under the warrant because the good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984) applies. (Doc. 33, at 8–11). More specifically, the government contends that Investigator Leitzen's initial entry and subsequent observations were "close enough to the line of validity" to not be "clearly illegal." (*Id.*, at 11). Defendant responds that "excised information should not be considered when determining the applicability of the *Leon* good-faith exception. Without Investigator Leitzen's excised observations, the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Doc. 28-2, at 8 (internal quotation marks removed)).

If law enforcement officers' reliance on a warrant was objectively reasonable even if the warrant is later determined to be invalid, the evidence seized pursuant to an invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (relying on *Leon*, 468 U.S. at 897)). "For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, the detectives' prewarrant conduct must have been close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013) (internal quotations omitted). "In making [the good-faith] determination, we ask 'whether a reasonably well-trained officer would have known that the search was illegal despite a judge's issuance of the warrant.'" *United States v. Lopez-Zuniga*, 909 F.3d 906, 909 (8th Cir. 2018) (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)); *United States v. Zarate*, No. 18-CR-2073-CJW-MAR, 2019 WL 3459236, at *6 (N.D. Iowa July 31, 2019) (explaining that

9

under the *Leon* analysis the Court looks to whether the officers' prewarrant conduct is close enough to justify a good faith belief that what they were doing was lawful and not to the warrant itself). This is because "[t]he rule in *Leon* is based on the theory that where there has been no police illegality, there is no conduct the courts need to deter and therefore no basis to enforce the exclusionary rule." *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997).

Despite *Leon*, "suppression [continues] to be appropriate in those situations where, notwithstanding the issuance of a warrant, 'the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *United States v. Conner*, 948 F. Supp. 821, 851 (8th Cir. 1996) (citing *Leon*, 468 U.S. at 919). "[T]he ultimate question under *Leon* is whether officers had an objectively reasonable basis to believe they were complying with the applicable law and the Fourth Amendment." *Id.* at 852 (cleaned up). "If the officers' prewarrant conduct is clearly illegal, the good-faith exception does not apply." *Cannon*, 703 F.3d at 413 (cleaned up). More concretely, the *Leon* good faith exception does not apply in at least four specific instances:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011) (quoting *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008)). In an instance in which "the issue [was] indeed police misconduct, the obtaining of nonconsensual visual and physical access to a dwelling place in violation of the occupants' Fourth Amendment rights," *Leon* did not

10

apply. *Conner*, 948 F. Supp. at 854. Likewise, in an instance in which the issue was prewarrant police misconduct in illegally seizing a bag, *Leon* did not apply. *United States v. O'Neal*, 17 F.3d 239, 243 n.6 (8th Cir. 1994).

Defendant claims that the third instance from *Fiorito* fits the set of facts here. (Doc. 28-2, at 8). The government does not even attempt to claim that Investigator Leitzen's prewarrant conduct was constitutional, but instead seems, as a last-ditch effort, to claim that if it is unconstitutional, it is at least not that much so: "The government asserts that [Investigator Leitzen's] entry, 6 minutes [after defendant left], is 'close enough to the line of validity' of the exigency, to make officers' belief in the validity of the warrant objectively reasonable." (Doc. 41, at 8).

The Court finds, after its de novo review, that the belief that the warrant was supported by probable cause was not objectively reasonable, but rather that law enforcement had actual knowledge that Investigator Leitzen's entry was unconstitutional. As Judge Roberts put it, "the facts in the case at bar show no justification for any investigator to believe he could enter defendant's residence without a warrant after the exigent circumstance of the overdose had been dealt with." (Doc. 40, at 30). Investigators Leitzen and Nicholas Soppe were standing at the door to defendant's residence as defendant left with medical personnel so they had actual knowledge that the exigent circumstance of dealing with defendant's potential overdose no longer existed. (Doc. 28-2, at 6:18–:20). Similarly, defendant did not consent to a search, and officers had actual knowledge there was no consent, as Investigator Leitzen told Investigator Soppe, "Hey, also, check -- see if he'll give us consent." (*Id.* at 11:52–:57). Investigator Leitzen's communications also explicitly show he had knowledge that without exigent circumstances or consent he would need a warrant. After defendant left, Investigator Leitzen told defendant's acquaintance, "What we're gonna probably end up doing is applying for a search warrant for the, uh, for the basement downstairs." (*Id.*, at 7:56–

11

8:04). Yet, armed with this knowledge, Investigator Leitzen entered the basement without a warrant. (*Id.*, at 12:19). Investigator Leitzen then said again, after coming out of the basement, "we'll have to bang out a search warrant." (*Id.*, at 17:46). Importantly, Investigator Leitzen was one of the officers who later executed the warrant. The other officers who executed the warrant were on scene when Investigator Leitzen entered defendant's apartment without a warrant but after defendant had already stabilized and been taken to the hospital by EMTs. Thus, law enforcement should have had knowledge that the search was unconstitutional under the Fourth Amendment, and that it was not reasonable to rely on the warrant obtained based on the unconstitutional search.

By finding that the *Leon* good faith exception does not apply in this instance, the Court is not finding that an alternative set of facts or even alternative facts included in the search warrant application would not have made this search proper. If, instead, the observations of other officers who had entered the basement with EMTs formed the basis for paragraph 2 in the warrant, this would be a different case as those officers were likely in the residence because of the exigent circumstance of defendant's overdose. *See e.g.*, (*Id.*, at 8:29 (unidentified officer exiting basement), 10:38 (second unidentified officer in plain clothes standing on basement steps), 10:53 (third unidentified officer at bottom of steps)). The same would be true of observations from the EMTs. The Court also acknowledges that defendant's acquaintance told Investigators Soppe and Leitzen that he saw drug paraphernalia in defendant's apartment, saying, "Oh, yeah, yeah, it was obvious." (*Id.*, at 5:03–:06). And Investigator Soppe told Investigator Leitzen, "Bunch of stuff in plain view . . . syringes, paraphernalia, tin foil, pipes, um, gem baggies, and there's a white powder on a scale." (*Id.*, at 11:36–:46). But that information from those

12

two sources did not make it into the warrant application either.[4] The Court is simply unable to rewrite the narrative here. Given the facts of what actually happened on October 14, the Court concludes on a de novo review that the *Leon* good faith exception is inapplicable, and suppression is the appropriate remedy. The government's objection on this second issue is overruled as well, and the Court grants defendant's motion to suppress.

## IV. CONCLUSION

For these reasons, the government's objection (Doc. 41) is **overruled**. The Court **adopts** the R&R. (Doc. 40). Defendant's Motion to Suppress (Doc. 28) is **granted**. Trial remains as scheduled.

**IT IS SO ORDERED** this 2nd day of December, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

---

[4] Here, the Court acknowledges that the author of the search warrant application, Investigator Sitzmann, was not on scene, and thus did not have actual knowledge of the lack of exigent circumstances or consent for Investigator Leitzen's search. Investigator Sitzmann also did not have independent knowledge of the additional events on scene that he could have used to supplement the warrant application. Investigator Sitzmann included what Investigator Leitzen communicated to him. The Court does not imply that Investigator Sitzmann intentionally left out information or inaccurately relayed what he learned. The Court finds, rather, that the proper information that did make it into the search warrant is insufficient.